(September 9, 1985)

■ JAMES L. DOLAN, an Infant, by His Father, JAMES J. DOLAN, et al., Respondents, v GARDEN CITY UNION FREE SCHOOL DISTRICT et al., Appellants.—In a personal injury action, defendant Craig Lally, an infant, by his father, Lawrence Lally, appeals from an order of the Supreme Court, Nassau County (Kelly, J.), dated November 23, 1983, which granted plaintiffs' motion pursuant to CPLR 325 (b) to remove the action from the District Court to the Supreme Court and for leave pursuant to CPLR 3025 (b) to serve an amended complaint increasing the ad damnum clause, and denied his cross motion for certain discovery, and defendants Garden City Union Free School District and Veteran's Transportation Co., Inc., appeal, as limited by their briefs, from so much of the order as granted plaintiffs' motion.

Order reversed, with one bill of costs payable to defendants appearing separately and filing separate briefs, plaintiffs' motion denied, and matter remitted to the District Court, Nassau County, for further proceedings consistent herewith.

By summons and complaint verified January 31, 1979, plaintiffs commenced this action in the District Court of the County of Nassau against defendant Garden City Union Free School District. The complaint alleged, *inter alia,* that on or about April 24, 1978, James L. Dolan, a student enrolled at the Garden City Junior High School, was on a bus being used by the school to transport students to a track meet, and was injured by the actions of another student. In the first cause of action, the infant plaintiff, James L. Dolan, sought recovery of $6,000 for personal injuries; in the second cause of action his father, James J. Dolan, sought recovery of $1,000 for medical expenses and loss of society and services. Both causes of action were predicated on the claim that defendant school district

was negligent in supervising and controlling the students who attended the school. The complaint alleged that, upon information and belief, the injuries sustained by the infant plaintiff were permanent in nature. According to plaintiffs' bill of particulars, dated April 12, 1979: "Plaintiff [James L. Dolan] sustained the following personal injuries: multiple corneal abrasions of the left eye with embedded dirt particles and has been left with a visible permanent corneal scar in the left eye directly caused by the thrown rock".

The school district commenced third-party actions against Veteran's Transportation Co., Inc. (Veteran's), the owner of the bus, and Craig Lally, the student who had allegedly thrown the rock which injured the infant plaintiff. Thereafter, on February 26, 1981 and March 4, 1981, respectively, plaintiffs served a supplemental summons and amended complaint upon "John" Lally (on behalf of his son, Craig Lally), and upon Veteran's naming them as codefendants together with the school district. The description of the infant plaintiff's injuries and the amount of recovery sought were the same as set forth in plaintiffs' original complaint.

By notice of motion dated June 30, 1982, plaintiffs sought (1) removal of the action to the Supreme Court, pursuant to CPLR 325 (b), based on the claim that the limited jurisdiction of the District Court would bar plaintiffs from the recovery they are entitled to; and (2) further amendment, pursuant to CPLR 3025 (b) of the amended complaint, by increasing the ad damnum clause in the first cause of action to $1,000,000 and in the second cause of action to $100,000.

In a supporting affidavit, plaintiffs' attorney maintained that the severity of the injuries were not known at the time the action was commenced, but were "now" known, and referred to the "medical report" of Dr. Elsa Rahn. In this "report", which was actually a letter to counsel dated June 3, 1982, Dr. Rahn stated that she saw the infant plaintiff on April 24, 1978, after the accident, and then on five subsequent dates within the following month. Her diagnosis was "multiple corneal abrasions of the left eye with embedded dirt particles which left a visible corneal scar". She next saw him on April 10, 1981, at which time "the scar to the left cornea still remained with extension into the pupillary zone and [she] found him to be more light sensitive in the left eye as opposed to the right eye". She next examined him on May 6, 1982, and found the scar still present, as well as "increased light sensitivity and lacrimation". In her opinion, the condition was permanent.

In an order dated October 21, 1982, Special Term (Vitale, J.), denied plaintiffs' motion "without prejudice to its renewal upon proper papers". The court noted that the "medical report" was "not sworn or affirmed under the penalty of perjury (CPLR 2106) so as to be entitled to consideration", and that plaintiffs had not satisfactorily explained the delay in seeking relief, in particular, the lapse of 14 months since the April 10, 1981 examination which disclosed the extension of the scar into the pupillary zone and increased light sensitivity.

Plaintiffs renewed their request for removal and amendment of the ad damnum clause by notice of motion dated September 19, 1983. This motion was supported by an affidavit of Dr. Joel Weintraub, sworn to on August 24, 1983. Dr. Weintraub's first and apparently only, examination of the infant plaintiff was on January 15, 1983. In his words:

"3. * * * My diagnosis is traumatic corneal scar of the left eye, which is the cause of the patient's symptoms of sensitivity to light and glare.

"4. The scar is not expected to become any less severe, the sensitivity to light and glare will remain with the infant throughout his life and in addition, the left eye, due to the nature of the injury received, is a greater risk than normal for development of glaucoma, retinal detachment and cataracts.

"5. My findings on examination were lineal scar of the corneal stroma, directly in the pupillary zone of the left eye, dilated fundus examination showed optic discs to the [sic] 30% cupped, right eye and 40% cupped in the left eye and a 1/2 disc diameter nevus of the inferior macular region in the left eye.

"6. It is my opinion, with a reasonable degree of medical certainty, that the aforesaid injuries were caused by the infant plaintiff being struck in the left eye by the thrown rock and further, that the aforementioned conditions are permanent".

In a supporting affirmation, counsel for plaintiffs referred to the Weintraub affidavit as evidence of the fact that the severity of the injuries was not completely known when the action was commenced and asserted that the extent of the injuries are "now presently known".

The defendants school district, Veteran's and Craig Lally opposed the motion, arguing, inter alia, that plaintiffs had not explained the reason for the delay in seeking amendment of the ad damnum clause, that the diagnosis of Dr. Weintraub contained essentially the same information that was set forth

in plaintiffs' bill of particulars, and that there was no showing that the injuries were recently discovered or were more severe than those which Dr. Rahn found in the 1981 examination. The defendants further argued that they would be severely prejudiced if, five years after the incident, they would have to investigate and defend an over $1,000,000 lawsuit, because the passage of time had foreclosed them from investigating the incident more thoroughly than they had done when their exposure was only $7,000.

In an order dated November 23, 1983, Special Term (Kelly, J.), *inter alia,* granted plaintiffs' motion to remove the action from the District Court, Nassau County, to the Supreme Court, Nassau County, without discussion and granted leave to plaintiffs to serve an amended complaint, in the form annexed to the moving papers. The ad damnum clause of the "proposed second amended verified complaint" sought recovery of $1,000,000 on the first cause of action, and $100,000 on the second cause of action.

We find that Special Term erred in granting plaintiffs' motion. Inasmuch as this finding effectively nullifies the Supreme Court's acquisition of jurisdiction over the action, we will not pass upon the question raised before Special Term by Craig Lally and Veteran's concerning the propriety of plaintiffs' service of the first amended complaint against them. This issue, as well as the discovery question raised by defendant Lally in his cross motion, may, if appropriate, be raised before the District Court, Nassau County, to which this action is being remitted.

While the amendment provisions of the CPLR must be liberally construed (*see, Murray v City of New York,* 43 NY2d 400, 404-405), a plaintiff does not have the absolute right to amend the complaint by increasing the ad damnum clause at any time, to any amount, subject to defeat only by the defendant coming forward with proof of actual prejudice (*see, Matter of Schwartz v New York City Tr. Auth.,* 104 AD2d 370, *appeal dismissed* 63 NY2d 914). "Leave to amend may not be granted upon mere request, without appropriate substantiation" (*Brennan v City of New York,* 99 AD2d 445, 446).

A motion to increase the ad damnum clause based on a claim of increased injuries must be supported by a twofold showing. First, the motion must be accompanied by an affidavit by plaintiffs, " 'showing the merits of the case, the reasons for the delay and the fact that the increase is warranted by reason of facts which have recently come to the attention of

the plaintiff[s] and excusing the failure or negligence necessitating the amendment so far as these facts are within the knowledge of the plaintiff[s]' " (*London v Moore,* 32 AD2d 543, quoting from *Koi v P. S. & M. Catering Corp.,* 15 AD2d 775, 776). Second, the motion must be accompanied by a doctor's affidavit or affirmation showing a causal connection between the injury and a consistent course of treatment for the accident-caused injuries (*London v Moore, supra*).

We are not unmindful of cases in this Department which appear to dispense with the latter requirement where the requested increase in the ad damnum clause is based "solely upon an update of original injuries" (*Hillenbrand v 3801 Review Place,* 72 AD2d 554; *Church v Catholic Med. Center,* 52 AD2d 898). However, an injury already shown to have resulted from the occurrence on which liability is predicated, is presumably also related to that occurrence when said injury is updated or reevaluated. Thus, we read the latter cases as dispensing only with the need to again demonstrate a causal connection between the injury and the occurrence. Plaintiff must, nevertheless, submit a medical affidavit or affirmation specifying, at the very least, the change in plaintiff's condition, the injuries which had not been considered previously, or the extent to which the condition has become aggravated (*Brennan v City of New York,* 99 AD2d 445, *supra; see, Matter of Schwartz v New York City Tr. Auth.,* 104 AD2d 370, 373, *supra; Maddox v City of New York,* 90 AD2d 535; *Gottesman v Beck,* 88 AD2d 632; *Bachtinger v Yee,* 85 AD2d 705; *Robbins v Sperlazza,* 72 AD2d 558).

The broad discretion vested in the trial courts to rule on a motion pursuant to CPLR 3025 (b) to amend the complaint by increasing the ad damnum clause is not absolute, and the granting of such motion will be overturned when the discretion has been abused. It is well settled that where a defendant demonstrates that actual prejudice will result from the amendment, the motion must be denied (*Loomis v Civetta Corinno Constr. Corp.,* 54 NY2d 18, *reh denied* 55 NY2d 801; *Gottesman v Beck, supra*). However, prejudice is not to be found, ipso facto in the belatedness of the amendment or in the mere exposure of the defendant to greater liability (*Loomis v Civetta Corinno Constr. Corp., supra,* p 23; *Fahy v Hertz Corp.,* 92 AD2d 581). "[T]here must be some indication that the defendant has been hindered in the preparation of his case or has been prevented from taking some measure in support of his position" (*Loomis v Civetta Corinno Constr. Corp., supra,* p 23).

There can be no precise line drawn that would demarcate a certain quantum of prejudice as sufficient to defeat the motion, nor can there be an exact rule of law formulated as a litmus test for determining whether the plaintiff has demonstrated entitlement to the amendment. Each case must be examined *sui generis,* and the degree of prejudice demonstrated must be weighed against the merits of plaintiff's claim of entitlement to the amendment and the sufficiency of the excuse proffered for the delay.

Defendants maintain that the minimal sum of $7,000 originally requested did not give them notice of the serious potential of the lawsuit or call for extensive investigation. It is not disputed that when their exposure was only $7,000 the defendants did not attempt to identify or locate the many witnesses to the accident. Nor was the physical evidence secured. Defendants have shown that their investigative efforts had been proportioned to the original ad damnum amount (*Fahy v Hertz Corp., supra,* p 583), obviously based upon the realistic determination by their attorneys that the minimal exposure did not justify the expenditure of time, money and effort to conduct an exhaustive investigation. To supplement the initial investigation would be difficult, if not impossible. The prejudice demonstrated by defendants is not found merely in their exposure to greater liability; additionally it lies in the fact that the passage of time has precluded them from preparing a viable defense on the issue of liability in an over $1,000,000 lawsuit (*cf. Loomis v Civetta Corinno Constr. Corp.,* 54 NY2d 18, 23, *supra*).

The prejudice might be regarded as less compelling if plaintiffs had (1) clearly demonstrated that the injuries increased in severity to an extent that would render inadequate the original amount of recovery sought, (2) sufficiently explained the reason for the belated discovery of the alleged aggravation, and (3) acted diligently in seeking the amendment. However, we find the substantiation proffered by plaintiffs for the requested amendment to have been wholly inadequate. The affidavit of Dr. Weintraub did not allege that there was anything about the nature of the injuries that was not known when the action was commenced. Dr. Weintraub explained in detail the location and dimension of the scar, but there is no indication that the condition was any different than the "visible permanent corneal scar" described in plaintiffs' bill of particulars. Since Dr. Rahn noted that there was sensitivity to light in 1981, the fact that Dr. Weintraub found there to be light sensitivity in 1983 does not support plaintiffs' claim that

the true extent of the injuries were not known until Dr. Weintraub's "re-evaluation". Even if we were to conclude that Dr. Weintraub's affidavit sufficiently demonstrated that the injuries had increased in severity, we would nevertheless find the absence of any explanation why this alleged aggravation was not discovered until January 1983, coupled with the unexplained nine-month delay between Dr. Weintraub's examination and the bringing of the renewed motion, as militating against plaintiffs' entitlement to the amendment.

It was an abuse of discretion for Special Term to grant the motion to, *inter alia*, increase the ad damnum clause. Further, this court is persuaded that plaintiffs can be compensated within the monetary jurisdiction of the District Court, Nassau County (*see*, L 1984, ch 11). Thus, we conclude that the removal of the action to the Supreme Court, Nassau County, was improper. Accordingly, the matter is remitted to the District Court, Nassau County. Mollen, P. J., Niehoff, Rubin and Lawrence, JJ., concur.